**Harry W. Schumacher, Appellant, v. Walter C. Klitzing et al., Appellees.**

Opinion filed January 23, 1933.

BYRON PIPER and PARKER & BAUER, for appellant; A. D. STEVENS, of counsel.

G. F. TAYLOR, for appellees City of Altamont and its officers; WALTER C. KLITZING, of counsel.

JONES, HOCKER, SULLIVAN & GLADNEY and WILLARD A. McCALEB, for appellee Fairbanks, Morse & Co.

POPPENHUSEN, JOHNSTON, THOMPSON & COLE, of counsel.

MR. JUSTICE EDWARDS delivered the opinion of the court.

The City of Altamont, a municipal corporation operating under the Commission Form of Government Act,

Cahill's St. ch. 24, ¶ 323 *et seq.*, and maintaining an electric generating plant for use of the city and its inhabitants, on January 5, 1932, by ordinance, determined that an addition to its plant was necessary for its more efficient operation; that a Diesel engine and incidental appurtenances be purchased; that same should be paid for out of the net income of the plant; that the city should issue its certificates of indebtedness therefor, payable solely as aforesaid, and that no tax should be levied on account of same. Bids therefor were received, and on February 1, 1932, the council passed an ordinance accepting the proposal of ·Fairbanks, Morse & Co., in the sum of $23,650.80, to be paid for in 60 equal monthly payments, evidenced by certificates as aforesaid, and directing the mayor and city clerk to enter into such contract, which was done.

The annual appropriation ordinance of the city, then in force, did not provide for such addition to the generating plant, and no vote of the people was had on· the question of the issuance of such certificates. The assessed valuation of the taxable property within the corporation at the time was $745,960, and the maximum indebtedness which could be legally incurred by the municipality was $18,649, of which there were then outstanding obligations amounting to $10,000. Said plant at such time, and previous thereto, had been operating at a net profit of $2,000 annually.

All the foregoing facts are alleged in the bill of complaint, which further averred that the net annual income of the plant, in the future, even with such addition, would be $2,000; also, that the pledge of the net income of the plant, theretofore owned and operated by the city as aforesaid, together with the proposed addition to same, amounted in law to a pledge and conveyance of the property itself, and constituted the certificates, so secured, debts of the city within the meaning of the law. That the city was without power

to enter into such contract; that it had no legal warrant to issue such certificates, payable out of the net revenue of the plant, without the ordinance authorizing their issue being first submitted to the electors of the city, and approved by a majority thereof; that the ordinance of January 5, 1932, did not go into effect until 30 days after its passage, and that the ordinance of February 1, 1932, authorizing the execution of said contract, was passed before the former act became operative.

The bill further charged that as a consequence of the foregoing allegations, the contract, and the ordinance purporting to authorize same, were void; that the city officers, and Fairbanks, Morse & Co., the appellees herein, treat the same as valid, and intend to carry them into effect unless restrained. The bill prayed that all of appellees, their agents and employees, be enjoined from carrying out or taking any steps to execute such contract in any manner whatever.

To this bill was filed a demurrer, which the court sustained. The complainant below, appellant here, elected to abide by his bill, which was dismissed, and from the order he has appealed.

Appellant contends that inasmuch as this cause involves the validity of a municipal ordinance, the appeal should have gone directly to the Supreme Court, and that we should order it transferred to that court. In section 118 of the Practice Act, Cahill's St. ch. 110, ¶ 118, designating which appeals should be taken, in the first instance, to the Supreme Court, it is provided, among others, "and in cases in which the validity of a municipal ordinance is involved and in which the trial judge shall certify that in his opinion the public interest so requires"; which section was quoted approvingly in *Village of LaGrange Park v. Jarecki,* 321 Ill. 177. In the instant case there is no such certificate

of the trial judge, hence the appeal was properly perfected to this court.

As before stated, the bill alleges that the pledge of the net income of the generating plant, in its entirety, to secure the certificates of indebtedness, amounts to a pledge and conveyance of property itself, and constitutes the obligations, thereby secured, debts of the city. This conclusion, in our opinion, is not warranted.

In *Ward v. City of Chicago*, 342 Ill. 167, and *Maffit v. City of Decatur*, 322 Ill. 82, it was held that where an enlargement of a public utility is authorized by ordinance, and the certificates of indebtedness are to be paid solely from the revenues derived from the operation of the utility, their payment does not create an indebtedness of the city, even though payment is not limited to the increased revenues arising from the improvement.

These are the last expressions of the Supreme Court on the subject, and consequently are the law of the State. This is the only allegation in the bill, to the effect that the ordinance and contract create a debt against the municipality, and under the cases last cited, such position is not tenable.

A private citizen who seeks to restrain city officials from entering into an unauthorized contract, unless the same involves the assessment of a tax for an illegal purpose, or the misappropriation or waste of public funds or property, must show that he will suffer an injury differing in kind, and not merely in degree, from that borne by the public generally.

*Seager v. Kankakee County*, 102 Ill. 669, was a case where a taxpayer sought an injunction to restrain a county board from unlawfully issuing a license to sell intoxicating liquors. The writ was denied, the court holding that whatever of injury would result from the issuance of the license, would be common to all the inhabitants of the township, affecting all alike, with

no special injury to the complainant; that the rule was established that where public officers are about to violate a duty, public in character, one not suffering any special injury cannot maintain a bill to restrain the violation. This decision is cited with approval in *Bistor v. Board of Assessors of Cook County,* 346 Ill. 362, at page 373; see also *City of Chicago v. Union Building Ass'n,* 102 Ill. 379, where it is said: ''In no case has it ever been held that a private individual may maintain a bill to enjoin a breach of public trust (in the absence of statutory authority) without showing that he will be specially injured thereby.''

In *Fellows v. Walker,* 39 Fed. 651, an injunction against the execution and sale of bonds for a gas plant, in the City of Toledo, Ohio, was refused where the act under which they were proposed to be issued provided that the revenue derived from the sale of the gas was to be applied to the payment of the principal and interest of such bonds, for the reason that it did not appear that it would be necessary to resort to taxation to meet such obligations.

*Rice v. City of Indianapolis,* 183 Ind. 203, 108 N. E. 584, was a suit by a taxpayer to restrain the city, and an electric light company, from carrying out a contract for public lighting, on the ground that the contract was void. The court ruled that complainant had no interest in the contract, except in so far as its performance would affect the city treasury, and where he fails to aver that any of the public funds are in danger of being illegally dissipated, his bill does not state a cause of action.

The Supreme Court of Wisconsin, in *Berger v. City of Superior,* 166 Wis. 477, 166 N. W. 36, in a suit by taxpayers to restrain performance of a street paving contract, on the ground that same was invalid, stated the law to be that the bill of complaint must affirma-

tively set forth that loss to the general taxpayers will follow, otherwise it is insufficient as a pleading.

The rule as above stated was also similarly declared in *Strickland v. Knight,* 47 Fla. 327, 36 So. 363; *Clark v. Interstate Independent Telephone Co.,* 72 Neb. 883, 101 N. W. 977; *Anderson v. City of Montevideo,* 137 Minn. 179, 162 N. W. 1073; *Andrews v. City of South Haven,* 187 Mich. 294, 153 N. W. 827.

In the instant case, there is no charge in the bill that the contract will impose any tax burden upon the municipality, nor in any way affect the city treasury. It does not aver that, as a consequence, the service rate for electricity will be increased, nor that property of the corporation will be taken or appropriated to further the performance of the terms of the contract; neither does it aver that appellant would sustain any special damage. On the contrary, it appears from the allegations that whatever of injury would result to him, would be common to all the inhabitants of the city. In such case, within the rule of the authorities cited, he, as a taxpayer, would have no recourse to equity to enjoin the performance of the terms of the contract.

In order to state a cause for equitable interference, it was imperative that appellant aver that as a result of the contract's performance, he would sustain some special injury. The bill contains no such allegation; for which reason it was insufficient, and the court properly sustained the demurrer.

*Decree affirmed.*